**No. 25-10038-B**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

Cecile Jackson, ***Pro Se***,
*Plaintiff-Appellant*

v.

Troy E. Meinck, Secretary of the United States Air Force,
*Defendant–Appellees.*

On Appeal from the United States District Court
for the Northern District of Florida, Pensacola Division

No. 3:23-cv-03881-MCR-HTC
Hon. M. Casey Rodgers, United States District Judge

---

# PLAINTIFF-APPELLANT'S AMENDED REPLY BRIEF (REDLINED CORRECTION)

---

Submitted by:


Cecile Jackson
Plaintiff, ***Pro Se***
2551 Salamanca Street
Navarre, FL 32566
email: jacksonLegalCase@gmail.com
Telephone: (850) 341-9285


February 27, 2026

**Jackson *v.* Sec'y, USAF, No. 25-10038-B**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Under Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, the undersigned Plaintiff-Appellant, ***Pro Se***, hereby submits this Certificate of Interested Persons and Corporate Disclosure Statement. The following is a complete list of all persons, associations, firms, partnerships, or corporations that have an interest in the outcome of this case:

- Ashworth, Gary A. (Former Acting Secretary, United States Department of the Air Force, Defendant-Appellee)
- Cannon, Hope T. (United States Magistrate Judge, Northern District of Florida)
- Coody, Jason R. (Former United States Attorney, Current Chief of Criminal Cases, Northern District of Florida)
- Couch, Mary Ann (Assistant United States Attorney; Attorney for Defendant-Appellee, TERMINATED)
- Grogan, Andrew J. (Assistant United States Attorney; Attorney for Defendant-Appellee)
- Heeken, John "Jack" P. (United States Attorney, Northern District of Florida)
- Jackson, Dr. Cecile S. (Pro Se, Plaintiff-Appellant)
- Kendall, Frank (Retired, Secretary, United States Department of Air Force, Defendant-Appellee)

- Marie A. Mattox, P.A. (Corporation; Attorney for Plaintiff*Appellant, TERMINATED)

- Mattox, Marie A., Esq. (Attorney for Plaintiff*Appellant, TERMINATED)

- Meink, Dr. Troy E., (Secretary, United States Department of Air Force, Defendant-Appellee)

- Pafford, William (Assistant United States Attorney; Attorney for Defendant-Appellee, TERMINATED)

- Rodgers, M. Casey (United States District Judge, Northern District of Florida)

- Spaven, Michelle K. (Former Acting United States Attorney; Northern District of Florida)

**AIR FORCE (AF) & EGLIN AIR FORCE BASE JUDGE ADVOCATE GENERAL ATTORNEYS**

- Blauvelt, Michael L. (AF Judge Advocate General Attorney)

- Department of the Air Force, Judge Advocate General's Corps (AF/JAG)

- Frank, Shelly M., Col. (AF Judge Advocate General Attorney)

- Jackson, Daphne L., Lt. Col. (AF Judge Advocate General Attorney)

- Krog, Andrew T. (AF Judge Advocate General Attorney)

- Warnock, Daniel L. (AF General Law Attorney)

- Zapater, Monica S., Maj. (AF Judge Advocate General Attorney)

**INSPECTOR GENERAL PERSONNEL**

- Clark, Paul M. Sr. (AF Inspector General Officer)

- Department of the Air Force, Office of the Inspector General (AF/IG)
- Garrick, William G. (AF Inspector General Officer)

**EEO & CIVILIAN PERSONNEL OFFICES**

- Air Force Personnel Center (AFPC), EEO Division
- Avance, Anthony (EEO Director, Department of the Air Force)
- Department of Defense Human Resource Activity, Diversity Management Operations Center (DODHRA DMOC)
- DSZ (Contract EEO Investigator)
- EEOC Birmingham District Office
- Equal Employment Opportunity Office, Department of the Air Force
- Porter, Eunice (EEO Counselor)

**AFCARO**

- Air Force Civilian Appellate Review Office (AFCARO)
- Naglic, Mark J. (EEO Case Management Specialist)
- SAF/MRBA – Office of the Assistant Secretary of the Air Force for Manpower and Reserve Affairs

**EGLIN AIR FORCE BASE, FLORIDA: MILITARY OFFICERS, ENLISTED, AND CIVILIANS**

- Atherton, Debra A.
- Bettua, Tracey
- Black, Kenneth, Col.
- Breaux, Terrell

- Buchholz, Trinity, SSgt
- Bunch, Arnold, Brig. Gen.
- Cain, Scott, General
- Clark, Stephen W., SSgt
- Davis, Scott A.
- Ewert, Kelly L., Helping Agency Coordinator
- Hawn, Rene', 2Lt.
- Hill, Lamar
- Howey, Clifford J., MSgt
- Jones, Rick
- Klus, Catherine F., 1st Lt.
- Lee, Jonathan, 1st Lt.
- Mensen, Kurando, Lt. Col.
- Moreno-Rosado, Alexis
- Nelson, Elaine K., 2nd Lt.
- Preble, Carman
- Prophet, Tiffany
- Rowbotham, Brant, SSgt
- Shull, Sarah J., MSgt
- Tasse, Rockey

- Uchima, Kevin Y. G., TSgt
- Weed, Scott A., Lt. Col.
- Wilke, Mark E.
- Willcox, David M.
- Wilson, Lynn

## CERTIFICATE OF SERVICE

Plaintiff-Appellant, ***pro se***, hereby certifies that a copy of the foregoing Certificate of Interested Persons and Corporate Disclosure Statement was served electronically through the Court's CM/ECF system on all parties of record.

Respectfully submitted,

February 27, 2026

***/s/ Cecile Jackson***

Cecile Jackson
Plaintiff, ***Pro Se***
2551 Salamanca Street
Navarre, FL 32566
email: jacksonLegalCase@gmail.com
Telephone: (850) 341-9285

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... 1

TABLE OF CITATIONS ......................................................................... 3

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................... 1

I. FMLA and Hostile-Environment Claims Are Preserved and Properly Before This Court .......................................................... 1

II. April 23, 2021: Within Hours of the EEO Filing, the Named Harasser Was Incorporated Into the Same-Day EEO-IG-JAG-Command Collaboration ..................................................................... 5

III. Undated Comment Cards: Solicited Post-Claim, Unauthenticated, and Contradicted by Their Own Content ................. 8

IV. Each Investigative Step Consumed the Last, Creating a Continuous Tainted Chain .................................................................. 13

V. Exhaustion and § 1614.310 Timeliness Arguments are Mooted by Void Processes ........................................................................... 18

A. Exhaustion is Moot .......................................................... 19

B. Processes Voided from Inception ......................................... 20

C. Constructive Discharge was Compelled .............................. 21

D. Appellee's Silence is Concession ...................................... 24

VI. The District Court Misapplied Babb and Failed to Conduct the Cumulative Hostile-Environment Analysis Required by Harris and Adams .............................................................................................. 25

A. Babb Misapplication. ....... 27

B. Cumulative Analysis Failure — Harris and Adams. ....... 28

C. Document Alteration. ....... 32

D. The Pattern Complete. ....... 33

VII. Three Preserved Independent Causes of Action Never Adjudicated on the Merits, Requiring Reversal and Rendition ....... 34

A. Stigma-plus — Fifth Amendment. ....... 36

B. Privacy Act — 5 U.S.C. § 552a. ....... 37

C. FMLA Interference — 29 U.S.C. §§ 2615, 2617. ....... 38

VIII. Independent action — Rule 60(d)(3). ....... 38

REVISED STATEMENT OF ORAL ARGUMENT ....... 39

CONCLUSION ....... 40

CERTIFICATE OF COMPLIANCE ....... 42

CERTIFICATE OF SERVICE ....... 43

**TABLE OF CITATIONS**

**Cases**

*Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) .................................. 19, 20, 24

*Adams v. Austal*, 754 F.3d 1240 (11th Cir. 2014) ................. 24, 27, 28, 29, 31, 33

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ................. 10, 11, 12, 31, 32

*Babb v. Sec'y, Dep't of Veterans Affs*., 992 F.3d 1193, 1199 (11th Cir. 2021) ......26

*Babb v. Wilkie,* 140 S. Ct. 1168, 1174 (2020) ............................... 24, 25, 26, 27, 33

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ..............................36

*Bryant v. Jones,* 575 F.3d 1281, 1307–08 (11th Cir. 2009*)*……………………..31

*Cannon v. City of West Palm Beach*, 250 F.3d 1299 (11th Cir. 2001) .................35

*Chambless v. Louisiana-Pacific Corp*., 481 F.3d 1345 (11th Cir. 2007)................18

*Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189 (11th Cir. 2004)........9

*Danley v. Allen,* 540 F.3d 1298 (11th Cir. 2008) .................................................34

*Davis v. Town of Lake Park,* 245 F.3d 1232 (11th Cir. 2001) ..............................31

*Edison v. Department of the Army*, 672 F.2d 840 (11th Cir. 1982 .......................37

*EEOC v. Sundance Rehabilitation Corp.,* 466 F.3d 490 (6th Cir. 2006) .............29

*Elgin v. Department of the Treasury*, 567 U.S. 1 (2012).......................................20

*Gregory v. Georgia Department of Human Resources,* 355 F.3d 1277 (11th Cir. 2004) ........................................................................................ 4, 5, 35

*Haines v. Kerner,* 404 U.S. 519 (1972) ..................................................................35

*Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316 (11th Cir. 2012) 1,8, 9, 24, 25, 34

*Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)…………31

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ................. 3, 24, 27, 28, 29, 33

*Kelly v. Dun & Bradstreet, Inc*., 557 F. App'x 896 (11th Cir. 2014) .......... 4. 5. 35

*Martin v. Brevard County Public Schools*, 543 F.3d 1261 (11th Cir. 2008) ....3, 22

*Mincey v. U.S. Postal Service,* 206 F. App'x 872 (11th Cir. 2006) ... 19, 20, 21, 24

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)………30

*Paul v. Davis*, 424 U.S. 693 (1976)........................................................................35

*Pennsylvania State Police v. Suders,* 542 U.S. 129 (2004).....................................21

*Rademakers v. Scott*, No. 2:07cv718, 2009 WL 3459196, at *4 (M.D. Fla. Jan. 22, 2009……………………………………………………………………...31

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000).....................10

*Sapuppo v. Allstate Floridian Insurance Co.,* 739 F.3d 678 (11th Cir. 2014)1, 8, 9, 24, 25, 34

*Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321 (11th Cir. 2011) ................ 18, 30

*Staub v. Proctor Hospital*, 562 U.S. 411 (2011) ............................................. 12, 17

*Tolan v. Cotton,* 572 U.S. 650 (2014) ....................................................................9

*Weisgram v. Marley Co.,* 528 U.S. 440 (2000) ................................................ 18, 40

**Statutes**

5 U.S.C. § 552a........................................................................................36

5 U.S.C. § 552a(e)(5) ...............................................................................37

5 U.S.C. § 552a(g)(4) ...............................................................................37

29 U.S.C. § 2615.......................................................................................37

29 U.S.C. § 2617................................................................................ 37, 38

**Regulations**

29 C.F.R. § 1614.105(g) ............................................................ 6, 19, 24

29 C.F.R. §  1614.310……………………………………………………….18

**Rules**

ABA Model Rule of Pro. Conduct 8.4(e).............................................7

Fed. R. Civ. P. 56(c)(2)..................................................................... 11, 12

Fed. R. Civ. P. 8 ..............................................................................................4

Fed. R. Civ. Evid. 901 ...........................................................................11

**Other Authorities**

AFI 51-110, Professional Responsibility Program..................................7

AFI 90-301, Inspector General Complaints Resolution ..........................7

DAFMAN 1-101, Air Force Manual ...................................................... 7, 16, 45

EEOC Management Directive 110 ......................................................6, 19

## INTRODUCTION

Appellee reduces this appeal to "two simple issues," (Appellee Br., Doc. 22 at 1), and omits multiple arguments raised in the opening brief, addressing none on the merits. This reply responds to the issues Appellee chose to raise and identifies what he chose to abandon. Under Eleventh Circuit, an appellee failing to respond to an argument raised in the opening brief concedes. *Hamilton v. Southland Christian Sch.*, Inc., 680 F.3d 1316, 1319 (11th Cir. 2012); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014). Appellee's substantive responses are few; silences are many, each addressed within.

## ARGUMENT

### I. FMLA and Hostile-Environment Claims Are Preserved and Properly Before This Court

Appellee asserts Dr. Jackson did not bring FMLA or hostile work environment (HWE) claims. Doc 22 at 68. This fails on three independent grounds. **First**, both theories are preserved through detailed factual allegations repeated across the record. During FMLA (Doc. 23-31 at 2-5)

leave between October 2021–January 2022 caused by the institutional campaign, (see *infra* §§ II-IV), Plaintiff was directed to check work emails, received regular hang-up calls, and contacted to sign perfect appraisals for a subordinate named in her EEO complaint, while other supervisors were available. Doc. 27-15 at 783 para 2; Doc. 1 at 11; Opposition, Doc. 31 at 27-28; Motion 59(e), Doc. 63 at 1-42; Opening Br., Doc. 18 at 25, 42.

Dr. Jackson was simultaneously subjected to continuing hostile chaplain emails referencing violent imagery during her protected leave Pl. Decl., Innuendoes, Doc. 27-15 at 778-779; Doc. 64-22 at 15; Doc. 23-20 at 16-18;; Doc. 1 at 10, 12; Opposition, Doc. 31 at 15; Motion 59(e), Doc. 63 at 11, conditions so intolerable that on December 16, 2021 – while still on FMLA leave, Dr. Jackson submitted her resignation letter explicitly stating she was "forced to resign due to the behaviors mentioned above and the smear attacks against my character," referencing the chaplain emails, the racial comment, and the hostile conditions by name. Doc. 27-15 at 780-782, 791-793; 780-794- These allegations appear in the Complaint, the opposition,

sworn EEO declarations, and the opening brief. See Opening Br., Doc. 18 at 37, 45;Doc. 27-15 at 748-777; Doc. 23-22 at 13-14; Doc. 23-13 at 32; Doc. 24-1 at 1062-1065; Doc. 23-61 at 138-141; Doc. 28-1 at 623. Requiring an employee on protected leave to perform work functions constitutes FMLA interference. *Martin v. Brevard Cnty. Pub. Schs*., 543 F.3d 1261, 1266-67 (11th Cir. 2008).

**Second,** the HWE documents severe and pervasive conduct satisfying *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993): a documented 285-day escalation from subjective leadership criticism to criminal accusations of timecard fraud, telework fraud, unauthorized classified access, and theft of government property, all embedded in official investigative records and circulated through the chain of command, internal and external to 96 CS, and to subordinates, and EEO, IG, JAG, and Helping Agencies following the April 23, 2021 informal EEO filing. Doc. 1 at 11-12; Opening Br., Doc. 18 at 37, 41; Doc. 18-14 at 5-31. These conditions were documented throughout sworn EEO declarations (Doc. 24-1 at 1059-1066; Doc. 27-15 at 748-794; Doc. 28-1 at 673-697), multiple EEO complaints

and amendments, Doc. 23-41 at 6; Doc. 24-1 at 893;  the Informal Inquiry, and the CDI record—created while employed — and culminated in a resignation letter written during FMLA leave explicitly attributing departure to the hostile conditions. (no win situations). Doc. 23-32 at 2-5; Doc. 27-15 at 780-789; Doc. 18-14 at 7-29; CDI, Doc. 27-15 at 339-736.  *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 899 (11th Cir. 2014).

Fed. R. Civ. P. 8 does not require label precision where the facts are alleged. Under Appellee's own authority, these theories are not barred. *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 899 (11th Cir. 2014) ("[T]he failure to make specific factual allegations in a charge does not necessarily preclude judicial review of those allegations.").

**Third**, Appellee cites *Gregory v. Georgia Department of Human Resources*, 355 F.3d 1277 (11th Cir. 2004), and undermines his position, asserting judicial claims are limited to the scope of the administrative charge. *Gregory* holds equally that "the scope of an EEOC complaint should not be strictly interpreted" and extends to any theory "reasonably expected to grow out of the charge." 355 F.3d 1277, 1280 (11th Cir. 2004). HWE and

FMLA-interference theories grow directly from retaliation charges documenting the same continuous pattern of escalating harassment (See *supra* § II-IV) stress-induced illness, and work demands imposed during protected leave. Appellee cannot invoke to cut off claims that *Gregory and Kelly* preserve.

## II. April 23, 2021: Within Hours of the EEO Filing, the Named Harasser Was Incorporated Into the Same-Day EEO-IG-JAG-Command Collaboration

Appellee's brief describes the April 23, 2021, Need a Vector (NAV-1) email as LtCol Weed seeking guidance from EEO, JAG, and IG, mischaracterizing the EEO claim as being filed afterwards, omitting key defects identified in the opening brief, Appellee Br., Doc. 22 at 48-49. That account excludes material facts shown in Appellee's own NAV-1 exhibit, Doc. 18-27 at 1-5; see also Opening Br., Doc. 18 at 16, 26-29, 38-40, 68 "Need a Vector"; Doc. 31 at 22 (Ex. 46). Timestamps establish the EEO filing preceded every action.

The complete record — documented in Doc. 1, Opposition Doc. 31, reasserted in Doc. 63, Opening Br., at 16, 26-27and never answered— reflects the following sequence:

**6:53 AM** — Dr. Jackson files informal EEO complaint naming Scott Davis. Doc. 23-16 ¶ 1 (at 3), at 5; Doc. 23-57 at 2.

**Before 11:11 AM** — EEO Avance initially denied under oath (Doc. 29-3 at 9:25–10:24), then disclosed he informed Weed of the EEO claim before 11:11 AM (Doc. 29-3 at 14:21-25), three days before official notification (Doc. 64-15 at 1) contrary to 29 C.F.R. § 1614.105(g) and MD-110. The brief also does not address Avance's same-morning coordination with Davis to add statements into Jackson's midterm appraisal (Doc. 29-5 at 5-6).

**11:11 AM** —LtCol Weed sent email "Need a Vector" (NAV-1) to IG, EEO, and JAG, copying Davis, who was named in the 6:53 AM complaint (Doc. 18-27 at 1-5). Davis claimed unawareness until April 26, (Doc. 29-5 at 5) yet confirms involvement on April 23, stating

NAV-1 in his own declaration as a joint action: "*That same day … Lt Col Weed sent …Need a Vector [NAV-1] email …* ***We*** *wanted guidance*" (*id.* 5). Davis use of the "we" indicates both were informed before LtCol Weed sent the 11:11 email.

**12:20 PM** — IG Clark proposed an inquiry 1) "absent a formal complaint," 2) solicit statements and "drill down" and work with JAG on "possible allegations worth inquiring into," 3) conduct an inquiry, specifically, to avoid mandatory AFMAN compliance, obtain legal sufficiency review, despite admitting no existing allegations (Doc. 18-27 at 4-5). IG Clark violated the AFI 90-301 ¶ 6.5 (complaint analysis requirement) and ¶ 1.43.3/2 (prohibition on commanders investigating reprisal allegations). Motion 59(e), Doc. 63 at 12 -16.

**<u>2:48 PM</u>** — Weed confirmed to IG, EEO, and JAG—Davis copied—a "tentative way-ahead" developed with the EEO Director, noting an

"unrelated(?) EO issue … notification for on Mon," and thanking the "IG/EO/JA team" for "mov[ing] mountains," (Doc. 18-27 at 3-4).

<u>**2:00 PM**</u>— JAG Col. Frank concurred describing it as "broad" and "undefined" endorsing the plan including IG Clark's AFMAN-avoidance and post-hoc legal-sufficiency review (Doc. 18-27 at 3), contrary to AFI 51-110 ¶ 7.1.2. and ABA Rule 8.4(e).

Appellee argues that it is speculation that statements were solicited after the EEO complaint, Appellee Br., Doc. 22 at 56, ¶14, while disregarding that four days later, documents were solicited and submitted, where Appellee does claims as preexisting. Under *Hamilton* and *Sapuppo*, those unrebutted issues remain before the Court. The legal consequences are addressed below.

## III. Undated Comment Cards: Solicited Post-Claim, Unauthenticated, and Contradicted by Their Own Content

Appellee's brief relies on the undated comment cards but does not address the six defects identified in the opening brief at 28, 51-52, 68, 74.

Because those defects were central to the district court's reasoning, this reply clarifies them briefly for the Court. Appellee's non-retaliatory explanation for the investigations rests on a single predicate: undated "comment cards" LtCol Weed claimed were received "mid-April" before he knew of Dr. Jackson's EEO complaint (Doc. 18-11 at 3-4).

**Content.** Weed described the cards as "specificity and anguish," "pleading cries for help," and distress he had "not seen before," (Doc. 18-11 at 3-4). Appellee repeated similar characterization (Appellee Br., Doc. 22 at 47-48). The district court accepted Weed's description without considering the actual content (SJ Order, Doc. 44 at 2-3, 28), which included general workplace concerns, objections to chain-of-command protocols, and requests to make operational decisions beyond their rank responsibilities (Doc. 64-23 at 1-3) [hereinafter **cards**]. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). Appellee does not reconcile the exaggerated characterization against the documents. *Tolan v. Cotton*, 572

U.S. 650, 660 (2014). Neither addressed authentication. Under *Hamilton* and *Sapuppo*, comprehensive silence on six independent grounds is concession.

**Timing and Contemporaneous silence.** The April 23, 2021, NAV-1 email describes "rumblings" and does not mention undated comment cards (Doc. 18-27 at 5). IG Clark's response proposes to develop “possible allegations", which would not be necessary if the cards actually existed and as characterized— acknowledging they did not exist (Doc. 18-27 at 4-5). The contemporaneous EEO Counselor's Report (signed June 30, 2021) including statements from Davis and Breaux, also included - is entirely silent on comment cards, (Doc. 24-1 at 2-80). The cards were first mentioned in Weed's August declaration (Doc. 18-11 at 3-4), and produced November 2021. Appellee does not address that sequence. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

**Solicitation.** SSgt Buchholz testified under oath the cards were solicited **after** April 29 submitted after being told Dr. Jackson called her a toxic leader and threatened her evaluations, "that's why I put that commander's

comment card in." (Doc. 29-10 at 9:24-11:11). Appellee does not address that the cards were not organic but solicited through false claims against Dr. Jackson (Doc. 18-14 at 17 ¶ j). *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000).

**Pre-Planned.** Weed's April 2022 declaration, “I finalized a plan with IG, JA, EEO, and Civilian Personnel to initiate the CDI” — not Col. Black (Doc. 18-13 at 6). Appellee does not address Weed's role in finalizing the CDI plan, his early notification, initiating the NAV-1 email, “crowdsourcing” other organizations, then thanking them for “piling onto this one,”(Doc. 18-27 at 1-5).

**Inaction.** Weed claimed undated comment cards, from mid-April were urgent and reflect unprecedented anguish. Doc. 18-13 at 6. If deemed true, which is incorrect, Appellee does not explain Weed’s inaction until hours after the EEO claim, then further leaving those same subordinates who expressed “specificity and anguish” and “pleading cries for help” under the same alleged harassing supervisor for over 285 days through

constructive discharge (April 2021 – February 2022). A genuine mental health crisis does not produce nine months of inaction. Appellee does not address that sequence. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

**Authentication.** The cards are undated, unsigned, with no chain of custody and no authentication protocol. Fed. R. Evid. 901; Fed. R. Civ. P. 56(c)(2). The district court accepted them as establishing a pre-EEO timeline without addressing a single authentication requirement. Doc. 64-23 at 1-3. Appellee does not defend that acceptance.

**Structure.** Davis — named harasser, NAV-1 participant — remained inside the investigative loop as statements were solicited. Appellee does not address Davis's inclusion along with EEO, JAG, IG, and during planning of evidence solicitation on the very day, hours after the EEO claim, and throughout Weed's crowdsourcing other agencies. Doc. 18-27 at 2-5. *Staub v. Proctor Hospital*, 562 U.S. 411 (2011).

Any one ground defeats the predicate. Together they establish the cards were manufactured to justify a decision already made and accepted

by the district court without examination. The Appellee court accepted Weed's timing and description of undated, unauthenticated documents as pre-existing fact and carried that foundation — unexamined — into every subsequent finding. *Anderson*, 477 U.S. at 248; Fed. R. Evid. 901; Fed. R. Civ. P. 56(c)(2). As a result, that unauthenticated, unexamined predicate — and the eighteen solicited MFR statements (Doc. 64-16 at 1-42, 46-55, 57-65; Doc. 28-41 at 393) hereinafter **MFR**]; see also Opening Br., Opening Br., Doc. 18 at 29-52; Doc. 31 at 23 (Ex. 53); Doc. 63 at 10-12 (MFR)) built on the same plan — was consumed into and initiated an evidence consumption chain as shown in the following section.

## IV. Each Investigative Step Consumed the Last, Creating a Continuous Tainted Chain

The April 23, 2021, events *supra* §§ II-III, led to the solicitation of eighteen MFRs and three undated comment cards (April 27 – July 17, 2021), as IG Clark proposal for Weed to "ask those junior folks" and "drill down" to develop allegations worth looking into. Doc. 18-27 at 4-5.

Appellee's argues a four-month gap between April 23 protected activity and the September 13 CDI. Appellee Br., Doc. 22 at 56, while remaining silent on the following chain of consumption that fills the four months when the record is viewed in as actual continuous chain versus.

| |
|---|
| Informal EEO Claim Filed → Same-Day Coordination →<br>Solicited Inputs → Informal Inquiry → CDI → EEO ROI → DOJ → District Court |

1. **April 23, 2021.** Informal EEO claimed, prematurely disclosed, resulting in immediate retaliation and constitutional violations. See *supra* § III and *infra* § VIII.

2. **April 27–July 17, 2021 –**Four days later undated comment cards and MFRs were solicited post-hoc. The undated comment cards were used to justify the informal inquiry. See *supra* § III.

3. **June 23–August 30, 2021 – Informal inquiry.** Six days later, on June 23, Col. Black initiates an informal inquiry. Doc. 18-14 at 5-6;. Appellee remains silent on the fact the investigating officer identified

the inquiry as an her ‘opinion’, Doc. 18-14 ¶ 4; and the record is void of the claimed 48 signed witness statements (*id*. ¶ 9), incorporates hearsay from the same individuals who submitted the MFRs and cards solicited after April 23, and includes claims from Davis, identified as statement #9 (*id*. at 28-29). The inquiry opinion presents Appellant as “a micromanager, and known to exhibit bullying behavior…and is racially biased. Doc. 18-14 at 8; SJ Order, Doc. 44 at 4. Opening Br., Doc. 18 at 30-31, 53, 66.

The informal inquiry was initiated based on the solicited undated comment cards, excludes witness statements, is cited as an opinion, does not satisfy basic evidentiary standards under the Federal Rules of Evidence, yet the district court treated the inquiry opinion as, neutral proof of “toxic leadership.” SJ Order, Doc. 44 at 4.

4. **September 13–October 8, 2021 – CDI.** On September 13, Col. Black orders a CDI, stating “the only reason I conducted the investigation was because there was an IG complaint.” Doc. 18-16 at 3. The record

presents Jackson's IG complaint (filed April-May 2021), Doc. 27-15 at 403-404, and, while listed as "IG Complaint 2" and "CUI AF102…" in the CDI ROI and docket is void of the Agency's IG complaint (*id* at 376).

Under DAFMAN 1-101, a CDI requires a properly authenticated ROI, signed witness statements or summaries, and a completed legal-sufficiency review. Doc. 18-29 at 20 ¶ 5.2.5.2. The CDI ROI omitted required signatures from the Investigating Officer, fifteen of eighteen witness summaries. Doc. 27-15 at 385-390, 409-412, 415-419, 432-465,468-473. Also, the EEO concurrence (*id* at 727-728) and JAG legal-sufficiency review were unsigned. *Id* at 732-735. Scott Davis, named harasser on the NAV-1 email, submitted a signed statement. *Id* 405-408. Despite these DAFMAN 1-101 violations and authentication defects, the CDI used the informal inquiry as a basis for allegation development. Doc. 27-15 at 334.

5. **EEO ROI and Summary judgment.** The NAV-1 emails, MFRs, undated comment cards, informal inquiry, and CDI ROI, were consumed into EEO ROIs byway of overlapping investigations with framings submitted to AFCARO and into district court's summary-judgment order, which in-turn deferred to the post-hoc undated comment cards,  informal inquiry opinion, and CDI as neutral evidence to reject retaliation, hostile environment, and constructive-discharge liability. SJ Order, Doc. 44 at 2-5, 28; Opening Br., Doc. 18 at 21-34. The docket records resting under ND FLA case number 3:2023cv03881 are tainted through-and-through.

Even under traditional but-for causation, the record permits only one conclusion: absent the April 23 confidentiality breach and NAV-1 plan to 'develop possible allegations' in response to Plaintiff's EEO filing, the events details *supra* §§ II-III and throughout the chain-of-record consumption would not have occurred nor would stressed induced Graves' disease,  constructive discharge.

**Appellee's four-month "gap**" argument depends on deleting steps 2 and 3 from the consumption chain, claiming the record jumps from April 23 EEO filing to Col. Black's September 13 CDI order. When soliciting statements and an informal inquiry intervene. Each link consumed the last.

Under *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011), that is textbook cat's-paw liability: when details from Weed, EEO, IG, JAG, and proximately caused consumed into Col. Black's decision to conduct a CDI. *Smith v. Lockheed-Martin* Corp., 644 F.3d 1321, 1328 (11th Cir. 2011); *Chambless v. Louisiana-Pacific Corp*., 481 F.3d 1345, 1350–51 (11th Cir. 2007). The four-month "gap" theory fails because Appellee's own admissions, and the structure of the record, show a single, continuous, chain—not independent, insulated actions. *Weisgram v. Marley Co.*, 528 U.S. 440, 457 (2000).

## V. Exhaustion and § 1614.310 Timeliness Arguments are Mooted by Void Processes

Appellee frames two threshold arguments: exhaustion bars review, and the constructive discharge claim is untimely under the 30-day § 1614.310 deadline. Appellee Br., Doc. 22 at 60.

### A. Exhaustion is Moot

Appellee calls the timing of Avance's disclosure “inconsequential” but concedes it occurred on April 23, 2021, the same day of the informal EEO filing. Appellee Br., Doc. 22 at 49. **That concession establishes the violation**. Because official notification was scheduled for April 26, 2021. Doc. 64-15 at 1. Any disclosure on April 23 — before or after the 11:11 AM NAV-1 email preceded official notice by three days, in direct violation of 29 C.F.R. § 1614.105(g) and MD-110's mandatory confidentiality and firewall.

Avance first denied making any courtesy call, then admitted under oath that he did so on April 23 only when confronted with the altered NAV-2 email.. Doc. 29-3 at 9:18-10:4 and at 14:7-15:13. Here, the EEO Director breached the confidentiality regulation on the day of filing; IG and JAG joined the same email thread and began planning a climate inquiry

and disciplinary "follow-on supervisor/command action" before official notice. NAV-1, Doc. 18-27 at 5; NAV-2, Doc. 23-44 at 2; NAV Comparison, Doc. 23-18 at 4-9; Doc. 23-45 at 2-4;. That is precisely the sort of structural breakdown *Accardi v. Shaughnessy, 347 U.S. 260, 267 (1954) and Mincey v. U.S. Postal Service, 206 F. App'x 872 (11th Cir. 2006)* treat as voiding the administrative process.

Appellee does not engage with *Accardi or Mincey*, but only contest the legal effect. Where the officials who control the EEO machinery violate the governing confidentiality and neutrality rules at inception, exhaustion is excused as a matter of law. *Mincey*, 206 F. App'x at 875–76.

**B. Processes Voided from Inception**

Appellee's § 1614.310 argument—that Dr. Jackson's constructive-discharge claim is untimely because she filed suit 38 days after the FAD rather than within 30 days—fails for the same reason. The 30-day clock under § 1614.310 presupposes a valid FAD issued at the conclusion of a legitimate process. 29 C.F.R. § 1614.310(a). Where the process is void under *Accardi*

because the agency violated mandatory procedural safeguards while the case was pending, there is no legitimate FAD from which a jurisdictional or claim-processing period can run. *Mincey*, 206 F. App’x at 875–76.

*Elgin* is instructive. There, the Supreme Court recognized that exhaustion and channeling requirements do not bar judicial review where resort to the administrative scheme would be futile because the tribunal has effectively predetermined the outcome. *Elgin v. Dep’t of Treasury*, 567 U.S. 1, 23 (2012). Here, the “tribunal”—the EEO Director, aided by the IG and JAG—predetermined the trajectory of Dr. Jackson’s case on April 23, 2021, by breaching confidentiality, coordinating with the named harasser, and setting in motion the informal inquiry and CDI that would later be folded into the district docket. A deadline generated by that chain of process cannot immunize the taint from review. *Mincey, 206 F. App’x* at 875–76. See *supra* § IV.

**C. Constructive Discharge was Compelled**

On the merits of constructive discharge, Appellee does not contest the governing standard under *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). He offers no serious response to the record showing that Dr. Jackson remained under intolerable conditions through her last day and had no meaningful avenue of relief. See s*upra* § I.

The undisputed facts, all cited in Appellant's opening brief, show:

- The CDI rested on -manufactured comment cards created only after Dr. Jackson filed her informal EEO complaint. Appellant Br. at 47; see also *supra* § III.
- In October 2021 she took FMLA leave for workplace stress and Graves' disease her physician documented as "directly attributable" to that stress. *Id.* at 52-53; Doc. 23-61 at 262; Opening Br., Doc. 18 at 20.
- While on protected leave, Plaintiff was required to monitor work email and to sign performance documents for a subordinate named in her EEO complaint, even though other supervisors were available. *supra* § I. Doc. 27-15 at 757-761; Doc. 18 at 42, 45, conduct that the

Eleventh Circuit has recognized as evidence of materially adverse treatment. *Martin v. Brevard Cnty. Pub. Schs*., 543 F.3d 1261, 1267 (11th Cir. 2008).

- During out-processing, after nearly thirty years of federal service, she expressly requested no contact with key actors, yet was subjected to further hostile encounters and loud public greetings; the Deputy Director's offer to personally escort her through out-processing was an implicit acknowledgment that the environment remained unsafe and hostile. (Gladiator, Doc. 23-20 at 20-21; Escort, Doc. 29-11 at 2-6)

Appellee does not engage with these facts. He does not dispute that Dr. Jackson was at the center of a 285-day sequence in which subordinates were hostile, supervisors were complicit, and the EEO Director, IG, and JAG—the very "helping agencies" to whom she might otherwise have turned—were all active participants in the same chain of events documented in NAV-1, the informal inquiry, the CDI, and the ROI. NAV-1, Doc. 18-27 at 1-5; NAV-2, Doc. 23-44 at 2; NAV Comparison, Doc. 23-45 at 2-4; Appellant Br. at 21-35.

*Suders* holds that constructive discharge occurs where "the abusive working environment became so intolerable that her resignation qualified as a fitting response." 542 U.S. at 134. When every institutional channel is either compromised or actively aligned against the employee, and the hostility continues unabated through the final day of employment, resignation is not voluntary; it is compelled as a matter of law. *Id.* at 147; *Martin*, 543 F.3d at 1267.

**D. Appellee's Silence is Concession**

The Eleventh Circuit "has repeatedly held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014). The rule applies symmetrically to appellees who fail to respond to an appellant's distinct grounds for reversal. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012).

Here, Appellant identified specific structural defects—Avance's April 23, 2021 breach of § 1614.105(g), IG Clark's and JAG Frank's participation on NAV-1, the lack of authentication and independence in the informal inquiry, the unsigned CDI administered by an interested official, and the ROI presided over by the same EEO Director—and tied them to *Accardi and Mincey* as independent grounds for treating the process as void. Appellant Appellee does not grapple with those defects or with *Accardi* and *Mincey*. Likewise, Appellant laid out each element of constructive discharge under Suders and Martin, supported by record citations; Appellee did not meaningfully respond. Under *Sapuppo* and *Hamilton*, that silence operates as a concession of both the facts and the governing standards.

## VI. The District Court Misapplied Babb and Failed to Conduct the Cumulative Hostile-Environment Analysis Required by Harris and Adams

The deference pattern is already before this Court. The district court accepted Weed's "anguish" characterization of the comment cards without examining them accepted Appellee's "gap" argument without addressing

his own admission that Weed merely "paused" the inquiry; accepted Wilson's unsupported opinions ("racially biased," "bullying," "intimidating," "vindictive") without reviewing a single underlying statement; accepted unsigned CDI documents as established fact; and accepted the agency's altered timeline without confronting Weed's NAV-1 timestamp change. Def. SJ Motion, Doc. 18 at 36-42, ; SJ Order, Doc. 44 at 3-6; Appellee's Br., Doc. 22 at 36, 48, 52). Sections III–V catalog those errors. Appellee's brief does not defend any of them. Instead, he asks this Court to defer to the district court in exactly the same way the district court deferred to him—transmitting the agency's narrative one level higher, still without examination. Doc. 22 at 54; Doc. 64-13 at 1-3. That is not appellate review; but circular deference, compounding reversible error at every link.

Appellee's entire substantive response to two independently reversible legal errors—misapplication of *Babb v. Wilkie* and failure to conduct cumulative hostile-environment analysis—occupies four sentences. Doc. 22 at 54.

**A. Babb Misapplication.**

Appellee argues the district court applied the correct federal-sector standard because it used the word "tainted." Doc. 22 at 54 (quoting ECF 44 at 26). Reciting the word is not applying the rule. *Babb v. Wilkie* holds that federal personnel actions must be "free from any discrimination," a standard the Court expressly distinguished from private-sector but-for causation. 140 S. Ct. 1168, 1174 (2020). Here, the district court analyzed causation under the traditional private-sector framework and then quoted *Babb v. Wilkie*s "tainted" language in its conclusion as if it had applied that standard throughout. SJ Order, Doc. 44 at 24–26. Appellee cannot point to a single personnel action where the court actually asked whether discrimination or retaliation played "any part" in the process, as *Babb v. Wilkie* requires. *Babb v. Sec'y, Dep't of Veterans Affs*., 992 F.3d 1193, 1199 (11th Cir. 2021). He does not because the court did not. That is legal error.

The district court compounded its Babb error by requiring proof of a materially adverse tangible employment action as "an indispensable

element" of the prima facie case. Doc. 44 at 25. Appellee now adds a comparator requirement — demanding Dr. Jackson identify a similarly situated employee treated more favorably. Appellee Br., Doc. 22 at 7. Both requirements are elements of the McDonnell Douglas private-sector burden-shifting framework. That framework does not apply here. *Lewis v. Sec'y of U.S. Air Force*, No. 20-12463 (11th Cir. June 30, 2022) held that "the McDonnell Douglas framework as to causation no longer applied to a federal Title VII retaliation claim." Appellee cites *Lewis*. *Lewis* forecloses Appellee's argument. Under *Babb*, the sole question is whether retaliation played any part in the way a decision was made — not whether Dr. Jackson can satisfy prima facie elements designed for private-sector plaintiffs. The district court's reliance on an inapplicable framework is an independent legal error requiring reversal.

**A. Cumulative Analysis Failure — Harris and Adams.**

Appellee responds to Harris and Adams with a single sentence: the court allegedly analyzed claims "independently and collectively." Doc. 22 at 54

(quoting ECF 44 at 26). Those four words are his entire answer to *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), and *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1250 (11th Cir. 2014).

Harris requires a totality-of-the-circumstances analysis of hostile environment claims, cumulatively weighing: (1) frequency, (2) severity, (3) physical threat or humiliation, and (4) interference with work performance. 510 U.S. at 23. The undisputed record satisfies each factor:

- **Frequency:** a 285-day continuum beginning within hours of the EEO filing and culminating in constructive discharge. See *supra* §§ II- IV.
- **Severity:** official findings labeling Dr. Jackson "racially biased," "bullying," and professionally unfit, broadcast through every institutional channel precisely when she sought protection from racial discrimination—what courts have recognized as objectively severe retaliatory inversion. *supra* §§ II-IV. See *EEOC v. Sundance Rehabilitation Corp.*, 466 F.3d 490, 500–01 (6th Cir. 2006).

- **Physical threat / humiliation:** eighteen targeted chaplain emails sent exclusively to her branch, continuing after written objections, including violent imagery ("stabbed in his ribs," "fight to the death with an evil emperor") during out-processing. Doc. 64-22 at 19-20.
- **Interference with work performance:** physician-documented Graves' disease "directly attributable to workplace stress," FMLA leave, and a medically supported resignation. See *supra* §§ II-V.

Every Harris factor is met on this record. The district court never articulated, let alone applied, any of them.

*Adams* requires that "all instances of harassment, not only those that are sufficiently severe or pervasive on their own, must be considered in the aggregate." 754 F.3d at 1250. The court instead proceeded incident by incident—pre-EEO conduct, then constructive discharge, then retaliation—rejecting each siloed category and then declaring the whole record inadequate without ever weighing the full 285-day sequence together. That is the precise error Adams forbids. See also *National Railroad Passenger Corp.*

*v. Morgan,* 536 U.S. 101, 116 (2002). The "convincing mosaic" here—timestamps, sworn admissions, altered emails, solicited statements, tainted investigations, targeted communications, and resulting physical injury—compels an inference of intentional retaliation when viewed collectively. *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1328 (11th Cir. 2011).

Appellee's reliance on "independently and collectively" is also misleading in context. The full sentence reads: "The Court rejects out of hand independently and collectively Jackson's arguments that the alleged verbal abuse, criticism, informal reprimands, and the denial of extra assistance constitute adverse employment actions." SJ Order, Doc. 44 at 26. That sentence appears in the court's Phase 1 discussion of pre-April-23 events under *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). Phase 2 addressed constructive discharge under Bryant and Hargray; Phase 3 addressed retaliation under Rademakers. At no point did the court lay out or weigh the full chain—EEO filing, same-day coordination, solicited MFRs, informal inquiry, CDI, chaplain emails, FMLA interference,

and constructive discharge—as a single hostile environment. Appellee extracts three words from a sentence rejecting pre-EEO conduct and presents them as proof of an Adams analysis the court never performed. The structure of the order shows otherwise.

**B. Document Alteration.**

Appellee does not dispute that Weed altered the NAV-1 email in 2022, (referenced as NAV-2) changing the original 11:11 a.m. timestamp to 12:10 p.m., and deleting language about "follow-on supervisor/command action," thereby obscuring the temporal link between Dr. Jackson's 6:53 a.m. EEO filing and the same-day multi-agency coordination. Opening Br., Doc. 18 at 27, 67-68; Doc. 18-27 ; Doc. 23-45; Doc. 23-44 .

Appellee does not address that Avance initially denied any early disclosure under oath, then admitted it when confronted with the altered timestamp. Under *Reeves v. Sanderson Plumbing Prods*., Inc., false denials followed by compelled admissions are classic evidence of pretext and consciousness of guilt. 530 U.S. 133, 147 (2000). The district court accepted

the agency's timeline without addressing either the alteration or the denial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Appellee's silence on both points confirms, rather than cures, that omission.

**C. The Pattern Complete.**

The pattern is consistent: the court accepted Weed's exaggerated card characterization; accepted a "gap" explanation Appellee's own brief now calls a "pause"; accepted Wilson's unsupported opinions without methodological scrutiny; accepted unsigned CDI documents; and accepted an altered NAV-1 timeline. It then declared the record "untainted," and Appellee now quotes that declaration back to this Court as proof of the very absence of taint in dispute. Appellee Br., Doc. 22 at 54; ECF 44 at 36. In the end, the court quoted Grogan; Grogan now quotes the court. Neither engages the underlying documents—timestamps, alterations, admissions, or the cumulative sequence of events. That is precisely what *Anderson, Reeves, Babb v. Wilke, and Adams* forbid. 477 U.S. at 248; 530 U.S. at 150–51; 140 S. Ct. at 1174; 754 F.3d at 1249–50.

On this record, the legal errors are not harmless: misapplying *Babb v. Wilkie's* "free from any discrimination" standard, refusing to conduct cumulative hostile-environment analysis under Harris and Adams, and ignoring unrebutted evidence of document alteration and pretext each independently requires reversal. Together, they confirm that summary judgment cannot stand.

## VII. Three Preserved Independent Causes of Action Never Adjudicated on the Merits, Requiring Reversal and Rendition

The district court's Summary Judgement order is silent as to two of the three independently preserved, non-Title VII claims: Fifth Amendment stigma-plus and Privacy Act violations. The third, FMLA interference, is addressed in *supra* § II. The Court's 59(e) Order dismissed Dr. Jackson's motion as merely "disput[ing] the Court's conclusion," Doc. 70 at 3, despite a detailed, evidence-based filing. Motion 59(e), Doc. 63 at 1–46.

Appellee's response brief disposes of FMLA and HWE asserting the claims were not brought. Appellee Br., Doc. 22 at 68. However, that assertion is fully addressed *supra* § II. Appellee's brief is entirely silent on

stigma-plus and Privacy Act. Under *Hamilton* and *Sapuppo*, silence on the merits operates as concession. A district court's failure to adjudicate properly preserved claims is independently reversible error. *Danley v. Allen*, 540 F.3d 1298, 1304–05 (11th Cir. 2008).

The underlying facts establishing each claim were present in the Complaint, Doc. 1, documented in sworn EEO declarations, multiple EEO complaints and amendments, the informal inquiry, and the CDI, created while Dr. Jackson was still employed. See *supra* § V. These claims were reasserted in Rule 59(e) motion, Doc. 63 and further developed in opening brief, Doc. 18 at 68-71.

Judicial claims are not confined to the precise labels used in an administrative charge or initial pleading but extend to theories reasonably expected to grow from the underlying facts. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004); *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 899 (11th Cir. 2014). Appellee's own authority preserves what he now seeks to bar. Because Dr. Jackson proceeded pro se, her preserved

claims must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The factual record establishing each claim is already before this Court in *supra* §§ III through VII. The only question is remedy.

**A. Stigma-plus — Fifth Amendment.**

Stigma-plus requires false statements, official publication, reputational injury, and a change in legal status. *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302–03 (11th Cir. 2001). The facts were present in the Complaint, Doc. 1, and further developed in Opposition, Doc. 18 and Motion 59(e) Doc. 63. The informal inquiry and CDI, officially labeled Plaintiff as "racially biased," "overbearing," "controlling," "toxic leader," and guilty of "bullying, harassment...telework fraud, timecard fraud, making malicious statements, not addressing a suicide threat (Doc. 25-1 at 384-385), falsely creating military/civilian divide and causing mental anguish, and pleading cries for help. See *supra* §§ III-V. The labels were incorporated official records, mid-term appraisals, MFR statements, declarations, Investigatory reports and submitted under her

name to AFCARO, across government emails, and presented into public-facing docket altering reputation, status, and impairing future federal rehire prospects. The district court adopted the same defamatory framing without examining a single underlying statement. ECF 44. See *supra* §§ III-V. Appellee does not dispute any element. Doc. 22 at 68. Stigma-plus damages are not subject to Title VII caps. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

**B. Privacy Act — 5 U.S.C. § 552a.**

Privacy Act liability requires unauthorized disclosure or maintenance of inaccurate records, intentional or willful conduct, and adverse effect. *Edison v. Dep't of the Army*, 672 F.2d 840, 846–47 (11th Cir. 1982). The facts were present in the Complaint, Doc. 1, and developed in Docs. 18 and 63. Avance admitted disclosing Dr. Jackson's confidential EEO intake to command within hours of filing — conduct he acknowledged "could be perceived as reprisal." Doc. 29-3 at 22:13-18. . False characterizations generated through the tainted chain were then embedded in her personnel records via the

informal inquiry and CDI. Section IV, *supra*. Maintaining inaccurate records violates § 552a(e)(5). Avance's admission establishes willfulness. Constructive discharge establishes adverse effect. Appellee does not contest any element. Doc. 22 at 68. Actual damages, costs, and fees are available under § 552a(g)(4), uncapped and independent of Title VII.

**C. FMLA Interference — 29 U.S.C. §§ 2615, 2617.**

The FMLA interference claim is fully briefed, and the record is set forth in *supra* § I. *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008). Compensatory and liquidated damages are available under § 2617(a)(1), independent of Title VII caps.

**VIII. Independent action — Rule 60(d)(3).**

Dr. Jackson addresses this only because Appellee continues to inject the Rule 60(d)(3) independent action, which he refers to as "Rule 60(b) independent action" into this Title VII appeal. Doc 22 at 16. The two proceedings are separate. The Rule 60(d)(3) independent action for fraud on the court was filed as a new civil action in the Northern District of

Florida, Case No. 3:25-cv-00427, while this appeal was pending. The district court dismissed it without reaching the merits. That dismissal has no bearing on the Title VII, FMLA, Privacy Act, or stigma-plus claims before this Court.

## REVISED STATEMENT OF ORAL ARGUMENT

Oral argument is warranted because this appeal presents a fact pattern involving coordinated actions between IG, JAG, EEO, command officials, and the supervisor named in the EEO complaint, all occurring within hours of Dr. Jackson's protected activity—conduct that proceeded despite the undisputed absence of any allegations or admissible evidence predating her EEO filing. The inclusion of the named harasser in same-day coordination, as well as LtCol Weed's statement of "crowd-sourcing" agency officials, raises questions that cannot be fully evaluated on the written briefs alone.

Oral argument will materially assist the Court in addressing (1) the EEO Director's repeated disclosures of information about the complaint

and his impact on initiating same-day, multi-agency coordination; (2) the complete absence of contemporaneous evidence predating the protected activity; (3) how the involvement of the individual named in the EEO claim planning communications intersects with causation, pretext, and federal-sector Title VII standards, as well as the constitutional and statutory claims raised in this appeal; and (4) the incorporation of altered, fabricated, and procedurally defective materials—including statements from the named supervisor in the EEO complaint, the opinion-only informal inquiry that lacked evidence, and the unsigned CDI—into the administrative and district court record as if admissible under Federal rules of Evidence. Given the complexity of the 285-day sequence and the significance of the legal questions presented, oral argument will aid the Court in achieving a clear and accurate resolution.

## CONCLUSION

For the foregoing reasons, and those set forth in Dr. Jackson's opening brief -, the judgment of the district court should be reversed and judgment rendered in her favor on all preserved claims, with appropriate

remedies determined consistent with this Court's opinion. *Weisgram v. Marley Co.*, 528 U.S. 440, 457 (2000).

## CERTIFICATE OF COMPLIANCE

### 1. Type-Volume

This document complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document, exempted by Fed. R. App. P. 32(f), the document contains ~6498 words.

### 2. Typeface and Style

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Palatino Linotype.

Respectfully submitted,

February 27, 2026

***/s/ Cecile Jackson***

Cecile Jackson
Plaintiff, ***Pro Se***
2551 Salamanca Street
Navarre, FL 32566
email: jacksonLegalCase@gmail.com
Telephone: (850) 341-9285

**CERTIFICATE OF SERVICE**

Plaintiff-Appellant, ***pro se***, hereby certifies that a copy of the foregoing was served electronically through the Court's CM/ECF system on all parties of record.

Respectfully submitted,

February 27, 2026

***/s/ Cecile Jackson***
Cecile Jackson
Plaintiff, ***Pro Se***
2551 Salamanca Street
Navarre, FL 32566
email: jacksonLegalCase@gmail.com
Telephone: (850) 341-9285